# EXHIBIT A


## CT Corporation

**Service of Process Transmittal**
10/02/2017
CT Log Number 532031513

**TO:**   Pam Mandeville
Selene Finance LP
8201 Cypress Plaza Dr
Jacksonville, FL 32256-4423

**RE:**   **Process Served in West Virginia**

**FOR:**   Selene Finance LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | R. APRIL HIGGINBOTTOM and A. PIIILLIP HIGGINBOTTOM, Pltfs. vs. SELENE FINANCE LP and WELLS FARGO BANK, N.A., Dfts. // To: SELENE FINANCE LP |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Preston County Circuit Court, WV Case # 17C118 |
| **NATURE OF ACTION:** | Wrongful Foreclosure |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Charleston, WV |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/02/2017 postmarked on 09/29/2017 |
| **JURISDICTION SERVED:** | West Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Lydia C. Milnes Mountain State Justice, Inc. 215 South Third Street, Suite 901 Clarksburg, WV 26301 (304) 326-0188 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/02/2017, Expected Purge Date: 10/07/2017 |
| | Image SOP |
| | Email Notification,  Pam Mandeville  pam.mandeville@selenefinance.com |
| | Email Notification,  Christine Sahyers  christine.sahyers@selenefinance.com |
| | Email Notification,  Nate Tincher  Nathaniel.Tincher@selenefinance.com |
| | Email Notification,  Jean Pierre Sat  Jeanpierre.sat@selenefinance.com |
| | Email Notification,  Andrea Wellons  andrea.wellons@selenefinance.com |
| | Email Notification,  Selene Litigation  litigation@selenefinance.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 5400 D Big Tyler Road |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process
Transmittal**
10/02/2017
CT Log Number 532031513

**TO:**   Pam Mandeville
Selene Finance LP
8201 Cypress Plaza Dr
Jacksonville, FL 32256-4423

**RE:**   **Process Served in West Virginia**

**FOR:**   Selene Finance LP  (Domestic State: DE)

**TELEPHONE:**   Charleston, WV 25313
919-821-7139

Page 2 of  2 / DB

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

CERTIFIED MAIL




U.S. POSTAGE >> PITNEY BOWES

ZIP 25311
02 4W
0000336774 SEP 29 2017

**$ 006.62**

BUSINESS & LICENSING

1610 - 00

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

**USPS CERTIFIED MAIL™**



9214 8901 1251 3410 0002 1602 86



**Mac Warner**
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

SELENE FINANCE LP
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313

Control Number: 203238

Defendant: SELENE FINANCE LP
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

Agent: C. T. Corporation System

County: Preston

Civil Action: 17-C-118

Certified Number: 92148901125134100002160286

Service Date: 9/28/2017

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

*Preston*

## IN THE CIRCUIT COURT OF ~~BERKELEY~~ COUNTY, WEST VIRGINIA

R. APRIL HIGGINBOTTOM,
A. PHILLIP HIGGINBOTTOM,
    Plaintiffs,

v.                                                CIVIL ACTION NO. *17-C-118*

~SELENE FINANCE LP,
WELLS FARGO BANK, N.A.,
    Defendants.

<u>SERVE:</u>

Selene Finance LP
9990 Richmond Avenue
Suite 400
South, Houston, Texas 77042

### SUMMONS

To:  The Above-Named Defendant:

### IN THE NAME OF THE STATE OF WEST VIRGINIA,

    You are hereby summoned and required to serve upon **Lydia C. Milnes/ Mountain State Justice, Inc.**, whose address is **215 South Third Street, Suite 901, Clarksburg, West Virginia, 26301**, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.

    You are required to serve your answer to the Complaint within **thirty (30)** days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

                      *Betsy Castle*
                      Clerk of Court
                      By: *Lisa Cushman-deputy*

Date: *September 25, 2017*

## IN THE CIRCUIT COURT OF PRESTON COUNTY, WEST VIRGINIA

**R. APRIL HIGGINBOTTOM and**
**A. PHILLIP HIGGINBOTTOM,**
    **Plaintiffs,**

v.                               **CIVIL ACTION NO.** _17-C-118_

**SELENE FINANCE LP and**
**WELLS FARGO BANK, N.A.,**
    **Defendants.**

## COMPLAINT

1.    This action arises out of illegal and abusive loan servicing practices, in which both Defendants, who are servicers of a home mortgage loan, repeatedly assured Plaintiffs that they would modify their loan while simultaneously telling them not to make payments, causing Plaintiffs to fall further and further behind, and ultimately resulting in the scheduling of foreclosure proceedings.   Defendant Wells Fargo Bank, N.A., instructed Plaintiffs April and Phillip Higginbottom not to make payments while being considered for a loan modification, entered into a loan modification with Plaintiffs, and then failed and refused to honor the agreement. Defendant Wells Fargo further made numerous misleading and false representations to Plaintiffs regarding the application of payments to their loan and the amounts due.  After assuming the servicing of the loan, Defendant Selene Finance LP directed Plaintiffs not to make payments while being considered for a loan modification, and then moved to foreclose on Plaintiffs without first providing a notice of right to cure and while refusing to provide Plaintiffs with the amount needed to cure the deficiency.  Plaintiffs bring this suit to save the home and for other relief.

### PARTIES

2.    Plaintiffs Rhonda April Higginbottom ("April") and Andrew Phillip Higginbottom ("Phillip") own the property located at 68 Watkins Ferry Way, Martinsburg, West Virginia.  April

1

works as a medical coder and Phillip works as a correctional officer. The couple have three young children.

  3.  Defendant Selene Finance LP ("Selene") is a corporation doing business in West Virginia with its principal place of business at 9990 Richmond Avenue, Suite 400 South, Houston, Texas 77042. Defendant Selene is the current servicer of Plaintiffs' mortgage loan.

  4.  Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank with its principal place of business at 101 North Phillips Avenue, Sioux Falls, South Dakota 57104. Defendant Wells Fargo is the originator and former servicer of Plaintiffs' mortgage loan.

  5.  Pursuant to West Virginia Code § 46A-5-107, venue is proper in Preston County, West Virginia.

## STATEMENT OF FACTS

Home Purchase and Refinance

  6.  On April 30, 2004, Plaintiffs April and Phillip Higginbottom purchased and moved into a home located at 68 Watkins Ferry Way, Martinsburg, West Virginia, using a loan from the West Virginia Housing Development Fund.

  7.  On April 20, 2005, Plaintiffs refinanced their home through Defendant Wells Fargo, increasing the loan principal balance to $186,751.00, with a fixed interest rate of 5.875%.

2009 Modification

  8.  In or around the summer of 2009, after Phillip suffered a debilitating injury, Plaintiffs contacted Defendant Wells Fargo seeking assistance with their loan payments.

  9.  Defendant Wells Fargo informed Plaintiffs that they could not be considered for a loan modification until they were at least sixty (60) days behind on their payments.

10.     Defendant's instructions were false. In fact, Plaintiffs would be eligible for available programs if they were at risk of default, even if they were current on their payments.

11.     In compliance with these instructions, Plaintiffs stopped making payments in order to become eligible for a loan modification.

12.     On or about September 24, 2009, Defendant Wells Fargo offered Plaintiffs a loan modification agreement. .

13.     The modification initially decreased Plaintiffs' payment, but created an adjustable rate mortgage that would automatically adjust up after the first five years of payments.

14.     Plaintiffs accepted the modification because it was the only option offered by Defendant Wells Fargo that provided them affordable payments, if only temporarily.

Mortgage Payments Steadily Increase

15.     From 2009 to 2015, the amount of Plaintiffs' mortgage payment increased until it reached $1455/month in 2015, nearly $200.00/month more than the payment had been before the 2009 modification was executed.

Wells Fargo Consent Order

16.     In 2011, Defendant Wells Fargo entered into a nationwide consent order regarding its servicing of home-secured mortgages, which required that certain standards be followed in its future loan servicing, including requirements regarding accurate and timely communications in the collections and loss mitigation process.

Misleading and Inaccurate Account Statements

17.     During the course of servicing Plaintiffs' loan, Defendant Wells Fargo issued numerous monthly statements containing false and inaccurate information regarding the amount due on the loan.

3

18.     For example, Plaintiffs made a double payment to Defendant Wells Fargo in March 2015.

19.     Neither the March 2015 nor April 2015 account statements issued by Wells Fargo reflect or credit Plaintiffs with the double payment made in March.

20.     Likewise, the March 2015 and April 2015 Wells Fargo account statements inaccurately state that Plaintiffs owed significantly more than was actually due on their loan.

21.     Similarly, Plaintiffs made payments to Defendant Wells Fargo in June and July 2015.

22.     Wells Fargo's account statements issued to Plaintiffs in July and August 2015 do not reflect receipt of these payments and inaccurately state that Plaintiffs owed for the months of June, July, and August 2015.

Holding Payments in Suspense

23.     Throughout the servicing of the loan, Defendant Wells Fargo regularly held payments made by Plaintiffs in a "suspense" or "unapplied funds" account rather than timely applying said payments to the account.

24.     For example, Plaintiffs made a payment to Wells Fargo in or around October 2015, which Defendant Wells Fargo held in an unapplied funds account, rather than applying to the amounts due and owing.

2015 Modification Request

25.     In or around August 2015, Plaintiffs contacted Defendant Wells Fargo to ask for a loan modification because they were struggling with the payments, which had increased over their original loan payments due to the 2009 loan modification's step rate feature.

26.     (a)     During the phone call with Defendant, Plaintiffs offered to make a payment.

(b)     Defendant Wells Fargo advised Plaintiffs they were required to be between 60 and 90 days behind on their mortgage in order to be permitted to apply for a loan modification.

(c)     Pursuant to Defendant's instructions, Plaintiffs did not make the loan payment, so that they could be eligible for a loan modification.

(d)     Defendant's instructions were false. In fact, Plaintiffs would be eligible for available programs if they were at risk of default, regardless of whether they were current on their payments.

26.     Plaintiffs filled out a loan modification application.

27.     Thereafter, Defendant offered Plaintiffs a loan modification. Said offer stated that Plaintiffs were required to make three trial payments, at which point Defendant would complete the modification of the loan.

28.     Plaintiffs accepted the offer.

23.     Plaintiffs performed on the contract: In October 2015, November 2015, and December 2015, Plaintiffs made trial payments of $1074.89 a month.

24.     In January 2016, despite its agreement to modify the subject loan upon receipt of the trial period payments, Defendant Wells Fargo refused to honor the loan modification agreement.

Continued Inaccurate and Misleading Account Statements

25.     During the trial loan modification period, Defendant Wells Fargo continued to send Plaintiffs account statements with incorrect and misleading information, demanding more money than was due and owing on the loan.

26.     For example, on or about November 9, 2015, Defendant Wells Fargo issued Plaintiffs an account statement indicating that a payment had been received and placed in the

unapplied funds account. Confusingly, the statement further demanded payments for the prior five months, and alleged an incorrect total amount due.

27.     Thereafter, approximately seven days later on or about November 16, 2015, Defendant Wells Fargo sent a second statement which incorrectly stated that "no transactions have occurred on your loan between the last billing statement and this statement date," and again demanded the same incorrect amount due from Plaintiffs.

28.     Similarly confusing and inconsistent statements were sent to Plaintiffs on December 15, 2015, and December 16, 2015.

Renewed Requests for Loan Modification

29.     Shortly after refusing to honor the 2015 loan modification, Defendant Wells Fargo sent Plaintiffs a new loan modification packet, and suggested that they re-apply for a modification.

30.     In February 2016, Plaintiffs began the loan modification application process again.

31.     Defendant Wells Fargo instructed Plaintiffs that it would not accept loan payments while it was reviewing Plaintiffs for the loan modification.

32.     Plaintiffs were instead directed to submit supporting documentation for their packet, and often the same documents were requested over and over again.

33.     In or around August 2016, Defendant Wells Fargo once again sent Plaintiffs a new loan modification application packet to start the loan modification process anew.

34.     Plaintiffs once again filled out the loan modification application packet and were told that they had until September 15, 2016, to submit their supporting documentation.

35.     Plaintiffs submitted the documents requested by Defendant.

36.     Nevertheless, Defendant Wells Fargo continued to contact Plaintiffs through the fall, once again asking for the same documents to be re-submitted, over and over.

37.     Finally, on or about January 6, 2017, Defendant Wells Fargo sent Plaintiffs a letter indicating that their modification application was ready for review.

Transfer of Servicing to Defendant Selene

38.     In January 2017, Plaintiffs received notices informing them that the loan had been sold, and servicing of the loan was being transferred to Defendant Selene Finance LP, effective February 14, 2017.

39.     Immediately after the servicing transfer, Plaintiffs called Defendant Selene regarding their ongoing modification request and asking about making payments.

40.     Like Defendant Wells Fargo, Defendant Selene told Plaintiffs not to make payments while they were being considered for a loan modification.

41.     On or about February 21, 2017, Defendant Selene mailed Plaintiffs a letter stating that it had the most recent loan modification application from Defendant Wells Fargo, that the application was complete, and that it would be reviewed and a decision on loss mitigation would be issued by March 19, 2017.

42.     On February 24, 2017, Defendant Selene mailed Plaintiffs a letter contradicting the prior letter, listing twenty-two allegedly outstanding documents which were purportedly needed in order to complete the loss mitigation review.

43.     Many of the documents demanded by the February 24, 2017, letter had been previously submitted by Plaintiffs; many other documents were irrelevant and could not be provided, such as requests for a death certificate, probated will, and divorce decree.

44.     Plaintiffs continued to provide the requested documents that were in their possession to Selene. However, on March 28, 2017, Defendant Selene issued a letter to Plaintiffs stating that their request for loan modification assistance was being denied, because the Plaintiffs

had allegedly failed to return a completed Financial Workout Package and Supporting Documentation.

45.     This was false; as Wells Fargo had confirmed, Plaintiffs had submitted a complete loan modification application packet on or before January 6, 2017.

### New Modification Request to Defendant Selene

45.     Plaintiffs, who did not understand why Selene had denied the modification, contacted Selene and asked to be reviewed again for a modification.

46.     Plaintiffs submitted a new uniform borrower assistance form and supporting documents on or about April 18, 2017.

47.     On April 25, 2017, Selene notified Plaintiffs that it was in receipt of their request, but that additional documentation was needed. Selene requested fourteen additional documents, many of which were repetitive, contradictory, and confusing.  For example, Selene requested "6 Months Most Recent Bank Statements for all Accounts Evidencing Continuation of Business Activity (all pages) 6 months business." This was confusing, as Plaintiffs do not own or operate a business.

48.     The letter additionally stated that certain documents, such as two years signed tax returns, were need to complete the loss mitigation package, but then confusingly and contradictorily stated that those documents had already been submitted.

49.     In an effort to meet Defendant Selene's confusing and contradictory requests, Plaintiffs regularly contacted Defendant Selene and continued to send in documents relating to the loan modification application.

Discovery of Internal BPO requirement

50.     In or around May 2017, Plaintiffs contacted Defendant Selene to find out why they were continuing to be told that they had not submitted all their documentation.

51.     Plaintiffs spoke with a different representative from usual, who asked Plaintiffs if they wanted to schedule their "internal BPO."

52.     (a)     Plaintiffs had never been informed of the need to have an "internal BPO," or internal inspection of their home, and had no idea that this as required by Selene.

          (b)     When entering into the loan modification process with Selene, Plaintiff's did not receive a packet with the application requirements, but were rather referred to Selene's webpage.

          (c)     The Selene webpage did not list "internal BPO" as one of the requirements for obtaining a loan modification.

53.     Plaintiffs called Defendant Selene again and spoke with their regular representative, and asked why they had never been informed of the requirement to obtain an internal BPO; the representative told them that it wasn't a big deal and wouldn't take long to complete.

54.     Plaintiffs were then contacted by a company from Colorado and three different real estate agents; Plaintiffs were confused about who was supposed to come to their home.

55.     When Plaintiffs tried to get in touch with the company in Colorado for clarification, they did not receive a response.

56.     Plaintiffs then tried to contact Selene to find out what was going on, and Defendant Selene told them that the request for the internal BPO had been cancelled.

<u>Defendant Selene issues Misleading Notice of Default</u>

57.     (a)     On or about May 17, 2017, Defendant Selene sent Plaintiffs a notice of default and intent to accelerate the loan balance.

        (b)     The May 17, 2017, notice was in fact an actual notice of acceleration, stating that "in order to cure the default, you must remit $169,912.32 on or before June 16, 2017."

        (c)     The May 17, 2017, notice was sent without providing Plaintiffs a notice of right to cure default, or providing them an amount owing in order to cure the default.

<u>Continued Loan Modification Run-Around</u>

58.     (a)     On or about May 23, 2017, Defendant Selene sent Plaintiffs yet another confusing and contradictory letter, stating on the one hand that numerous documents were missing, but also stating many of those same documents had been submitted, and ultimately stating that the loss mitigation request was still incomplete.

        (b)     The letter gave Plaintiffs until the next day, May 24, 2017, to provide the missing documents. Plaintiffs did not receive the letter until after the deadline.

        (c)     On May 26, 2017, Defendant Selene sent Plaintiffs a letter refusing their request for a loan modification, allegedly for failing to provide a completed "Financial Workout Package and Supporting Documentation."

59.     Plaintiffs contacted Defendant Selene again, and at Selene's direction, on or about June 20, 2017, Plaintiffs resent documentation to Defendant Selene in order to obtain a new loan modification review.

Referral to Foreclosure

60.    Upon information and belief, on June 26, 2017, Defendant Selene referred Plaintiffs' property for foreclosure, and the foreclosure sale was scheduled for July 11, 2017, a mere fifteen days later.

61.    (a)    On or about June 26, 2017, at Selene's direction, Plaintiffs called Defendant Selene.

       (b)    Defendant Selene informed Plaintiffs it had no obligation to work with Plaintiffs, because it was within 37 days of the foreclosure sale.

       (c)    Plaintiffs told a Selene representative that Plaintiffs would agree to a short sale instead of a foreclosure on the subject home, but Defendant Selene redirected the conversation toward a new loan modification.

       (d)    Accordingly, on that date, Plaintiffs resubmitted all loan modification application documentation to Defendant Selene.

62.    (a)    Also on or about June 26, 2017, Plaintiffs contacted Selene to find out what amount would need to be paid in order to cure the deficiency.

       (b)    The Selene representative told Plaintiffs that he could not provide an exact figure, because he did not have the information regarding how much attorney fees would need to be paid.

63.    From on or about June 26 until June 30, 2017, Plaintiffs continued attempting to contact Defendant Selene to obtain a reinstatement figure to no avail.

64.    On July 3, 2017, Defendant Selene informed Plaintiffs that it was again denying Plaintiffs' request for loss mitigation assistance, again for their alleged failure to submit a completed "Financial Workout Package and Supporting Documentation."

Damages

65.     As the result of Defendants' delay and refusal to accept payments, significant arrears have accrued on the loan that make it impossible for Plaintiffs to reinstate the loan or seek alternatives to foreclosure, such as selling the home or refinancing the loan.

66.     If Plaintiffs had known that Defendants Wells Fargo and Selene would not provide them with a loan modification or other assistance, they would have sought alternatives to foreclosure before the accrual of significant arrears.  For example, if Plaintiffs had understood Defendants would not provide them with a loan modification or other assistance, they would have made double payments to get caught up while the arrearage was still low.

66.     Defendants Wells Fargo and Selene did not follow commercially reasonable standards in servicing the loan, including failing to comply with regulations and guidelines or commercially reasonable practices in servicing the loan.

67.     As a result of Defendants' conduct, Plaintiffs have suffered financial loss, harm to their credit, annoyance and inconvenience, emotional distress, and fear of foreclosure.

## CLAIMS FOR RELIEF

## COUNT I - MISREPRESENTATIONS, THREATS AND UNFAIR CONDUCT

68.     Plaintiffs incorporate the preceding paragraphs by reference.

69.     Defendants used fraudulent, deceptive, or misleading representations or means to collect or attempt to collect claims or to obtain information concerning Plaintiffs as described above, including misrepresenting the amounts owed and misrepresenting the status and terms of the account, in violation of West Virginia Code § 46A-2-127.

70.     Defendants used unfair or unconscionable means in an effort to collect a debt as described above, including by refusing to honor the loan modification agreement (Defendant Wells

Fargo), refusing payments (both Defendants), and refusing to provide assistance that would address the damage caused by their own misconduct (both Defendants), and by moving to foreclose on Plaintiffs' without providing adequate notice or opportunity to cure (Defendant Selene), in violation of West Virginia Code § 46A-2-128.

71.     Defendant Selene made unlawful threats in collecting on the loan, including by threatening the assessment of fees that it had no right to assess or collect, in violation of section 46A-2-124 of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    a. Maximum civil penalties per violation of the West Virginia Code, pursuant to section 46A-5-101 and -106 of the West Virginia Code, as appropriate;

    b. Actual damages;

    c. Reasonable attorney's fees and the cost of this litigation; and

    d. Such other relief as the Court deems equitable and just.

## COUNT II – REFUSAL TO APPLY PAYMENTS

72.     Plaintiffs incorporate the preceding paragraphs by reference.

73.     As alleged herein, Defendants refused Plaintiffs' payments in violation of section 46A-2-115 of the West Virginia Code.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

    a. Maximum civil penalties per violation of the West Virginia Code, pursuant to section 46A-5-101 and -106 of the West Virginia Code, as appropriate;

    b. Actual damages;

    c. Reasonable attorney's fees and the cost of this litigation; and

    d. Such other relief as the Court deems equitable and just.

## COUNT III – ILLEGAL DEBT COLLECTION

74.     Plaintiffs incorporate the preceding paragraphs by reference.

75.     Defendant Selene referred Plaintiffs' property for foreclosure without providing Plaintiffs a notice of right to cure default in the form and with the information required by West Virginia Code section 46A-2-106.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

  a.  Maximum civil penalties per violation of the West Virginia Code, pursuant to section 46A-5-101 and -106 of the West Virginia Code, as appropriate;

  b.  Actual damages;

  c.  Reasonable attorney's fees and the cost of this litigation; and

  d.  Such other relief as the Court deems equitable and just.

## COUNT IV – FRAUD

76.     Plaintiffs incorporate the preceding paragraphs by reference.

77.     Each Defendant misrepresented that Plaintiffs had to be in default to be considered for assistance, that it could not accept payments, and that it was timely and appropriately reviewing Plaintiffs' application for assistance and taking all appropriate actions to assist Plaintiffs, and suppressed that Defendants were not appropriately reviewing the applications or following industry standards in the servicing of the account.

78.     Defendants' representations were false, and were knowing, reckless, and/or intentional.

79.     Defendants' misrepresentations and suppressions as described herein were material.

80.    Plaintiffs reasonably relied on Defendant's misrepresentations when they repeatedly submitted documentation, refrained from making payments at Defendant's instructions, and did not pursue alternatives to foreclosure before significant arrears accrued.

81.    Plaintiffs were damaged as the proximate result, including by the accrual of significant arrears on the loan that made foreclosure inevitable, the referral of the home into foreclosure, and the significant harm to their credit.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

  a.  Actual damages;

  b.  Punitive damages;

  c.  Reasonable attorney's fees and the costs of this litigation; and

  d.  Such other relief as the Court deems equitable and just.

### COUNT V - BREACH OF CONTRACT (DEED OF TRUST)

82.    Plaintiffs incorporate the preceding paragraphs by reference.

83.    Defendants and Plaintiffs are parties to a contract, namely, the Note and the Deed of Trust.

84.    The contract requires that payments be applied to the account, and also that they be applied first to interest, then to principal, then to escrow, and to late fees only after Plaintiff is current on principal, interest, and escrow.  Deed of Trust ¶ 2.

85.    "All rights and obligations contained in this [contract] are subject to any requirements and limitations of Applicable Law." Id. ¶ 16.

86.    The Deed of Trust voids any provisions contained within for Borrower to pay attorney's fees. Id. ¶ 25.

87.     The Deed of Trust agreement between the parties provides that "Lender shall give notice to Borrower prior to acceleration. . . . The notice shall specify: (a) the default; (b) the action required to cure the default; and (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." Id. ¶ 22.

88.     The law of contracts implies a duty of good faith and fair dealing into a party's exercise of its discretion under a contract, including the discretion to modify or alter the terms of the agreement.

90.     Defendant Selene breached its duties under the contract, including its duties to exercise its discretion in good faith, and thereby breached the contract by:

    (a)     Assessing and/or threatening to assess unauthorized default and attorney fees to the account;

    (b)     Directing Plaintiffs not to make payments to the account while Plaintiffs were seeking a loan modification;

    (c)     Accelerating the subject loan without first providing notice of right to cure default;

    (d)     Failing to provide right to cure default with 30 days' notice prior to foreclosure sale date;

    (e)     Failing and refusing to provide the amount necessary to cure default until approximately five days prior to the foreclosure sale, despite Plaintiff's repeated requests; and

    (e)     Assuring Plaintiffs that Defendant was working out a loan modification and simultaneously referring the home to foreclosure.

91.     Defendant Wells Fargo breached its duties under the contract, including its duties to exercise its discretion in good faith, and thereby breached the contract by:

16

    (a)    Holding Plaintiffs' payments in a suspense account, and applying payments incorrectly to purported amounts due;

    (b)    Discouraging Plaintiffs from providing payments to the account in order to be considered for a loan modification;

    (c)    Directing Plaintiffs not to make payments to the account while Plaintiffs were seeking a loan modification; and

    (d)    Failing to comply with applicable law, including obligations under consent orders and federal servicing regulations.

92.    Defendants' respective breaches of their contractual duties were intentional, wanton, and/or reckless.

93.    Plaintiffs were damaged as a proximate result of Defendants' respective breaches of contract.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

    a.  A declaration that the Defendants breached the contract as alleged;

    b.  Actual and punitive damages;

    c.  Reasonable attorney's fees and the cost of this litigation; and

    d.  Such other relief as the Court deems equitable and just.

## COUNT VI — BREACH OF CONTRACT (MODIFICATION AGREEMENT)

94.    Plaintiffs incorporate the preceding paragraphs by reference.

95.    Defendant Wells Fargo, in its individual capacity and its capacity as Defendant Selene's predecessor in interest, offered Plaintiffs a contract, namely, the 2015 loan modification agreement.

96.    Plaintiffs accepted the contract terms.

96.    Plaintiffs performed on the contract as agreed.

97.    Defendant breached the contract by refusing to honor the terms of the contract.

98.    Defendant's conduct was intentional, wanton, and reckless.

99.    Plaintiffs were damaged by Defendant's breach, including through the accrual of substantial arrears on the loan.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

a.    A declaration that the Defendants breached the loan modification contract as alleged;

b.    Actual and punitive damages;

c.    Reasonable attorney's fees and the cost of this litigation; and

d.    Such other relief as the Court deems equitable and just.

## COUNT VII – TORTIOUS INTEFERENCE WITH CONTRACT

100.    Plaintiffs incorporate the preceding paragraphs by reference.

101.    Plaintiffs entered into a loan contract, secured by their home, by which Plaintiffs were to make payments for the benefit of the loan's owner and to ensure against foreclosure. Said payments were to be applied to the account.

102.    Upon information and belief, Defendants Wells Fargo and Selene each serviced the loan on behalf of another entity that is the true party to the contract.

103.    Defendants Wells Fargo and Selene intentionally interfered with said contract by refusing Plaintiffs' payments, directing Plaintiffs not to make payments, refusing to honor the 2015 modification agreement, and refusing to provide appropriate loss mitigation solutions that were available.

18

104.   As a result of Defendants' actions, substantial and unaffordable arrears accrued on the loan over the course of approximately two years.

105.   Plaintiffs have suffered harm and damage as the direct result of Defendants' interference with the contract, including substantial accrued debt and the referral to foreclosure.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.   Actual damages;

b.   Punitive damages and reasonable attorney fees and the costs of this litigation; and

c.   Such other relief as this Court deems equitable and just.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

> **Plaintiffs,**
> **R. APRIL HIGGINBOTTOM,**
> **A. PHILLIP HIGGINBOTTOM,**
> **By counsel,**

Lydia C. Milnes (WV Bar No. 10598)
Jennifer Wagner (WV Bar No. 10639)
Mountain State Justice, Inc.
215 South Third Street, Suite 901
Clarksburg, WV 26301
(304) 326-0188
(304) 326-0189 (fax)